IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>EDWARD R. HANSEN,<br><br>　　　　　Defendant. | **4:18CR3140**<br><br>**FINDINGS, RECOMMENDATION AND ORDER** |

　　　This matter is before the court on Defendant's Motion to Dismiss. (Filing No. 84). For the reasons set forth below, the motion should be denied in its entirety.

BACKGROUND

　　　A one-count indictment was filed against Defendant Edward R. Hansen ("Defendant") on September 18, 2018. (Filing No. 1) Count I alleges Defendant violated 18 U.S.C § 922(g)(1) and § 924(a)(2), as he has been convicted of a crime punishable by imprisonment for a term exceeding one year, and he "did knowingly possess in and affecting commerce: four rifles; three pistols; two shotguns; and ammunition; which has been shipped and transported in interstate commerce." (Filing No. 1).

　　　A superseding indictment was filed on July 17, 2019. The superseding indictment alleged a violation of the same statutory sections, with slightly modified language. (Filing No. 39)

　　　A jury was chosen, and trial began on August 19, 2019, with the parties presenting opening statements and the government presenting the testimony of

Paul Deaver ("Deaver"), a former law enforcement officer for the Ord Police Department. During direct examination, the government presented Exhibit 44, which Deaver identified as an AR-15 found in Defendant's home on April 3, 2017. (Filing No. 70 at CM/ECF p. 29). At the end of the day, Judge Kopf advised the jury that they would take an evening break and return the next morning at 9:00 a.m. (Filing No. 70 at CM/ECF p. 61).

On August 20, 2019, trial resumed on the record and Judge Kopf stated that a matter had come up that "probably requires a mistrial." (Filing No. 71 at CM/ECF p. 2). He stated that the ATF report provided to defense counsel that morning indicated the ATF could not establish an interstate nexus for the AR-15 presented on August 19, 2019. Defense counsel moved for a mistrial asserting that the presentation of the AR-15 unfairly prejudiced Defendant's right to a fair trial. (Filing No. 71 at CM/ECF p. 2). The motion for mistrial was granted. (Filing No. 71 at CM/ECF p. 3). Counsel for the government, defense counsel, and Defendant agreed to hold a status conference on September 19, 2019. (Filing No. 71 at CM/ECF pp. 3-6). The court found that the interests of justice outweighed the interests of the public and of the defendant in a speedy trial under 18 U.S.C. § 3161(h)(7)(A), and the time between August 20, 2019 and September 19, 2019 should be excluded under the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(A). (Filing No. 71 at CM/ECF p. 7).

A nineteen-count second superseding indictment was filed on September 18, 2019 alleging separate violations of 18 U.S.C § 922(g)(1) and § 924(a)(2) for each of the listed guns and ammunition. (Filing No. 75). On September 19, 2019, after the "joint oral motion of the parties" the jury trial on this case was set for February 3, 2020. (Filing No. 78). Defendant waived personal appearance at arraignment and entered a plea of not guilty as to all counts in the second superseding indictment. (Filing No. 79, Filing No. 80).

2

On January 24, 2020, Defendant moved to dismiss this case alleging violations of his due process and speedy trial rights, as well as a violation of his right to be free from double jeopardy. (Filing No. 84). Defendant requested an evidentiary hearing, which was held on March 6, 2020. Counsel for Defendant and the government asked the court to take judicial notice of the docket, Defendant's exhibits 301 and 302, and the sentencing guidelines. (Filing No. 101, audio file). The parties submitted the motion on the evidence included with their briefing. Defendant requests an order dismissing the case with prejudice, or alternatively, limiting the evidence and Counts upon which the government may proceed. (Filing No. 84 at CM/ECF p. 3).

## ANALYSIS

I.   Alleged Fifth Amendment Violations

Defendant argues that his trial began based upon the sole count of the superseding indictment "where the government first displayed an AR15 firearm before the jury and then was unable to prove the interstate nexus connection for the AR15 rifle." (Filing No. 84 at CM/ECF p. 1). He argues that he requested the interstate nexus information well before the start of trial, and the government failed to provide it. Defendant argues that in certain situations a retrial of a defendant on the same charges is barred if the defendant is forced to request a retrial because of certain types of prosecutorial misconduct. Defendant argues that the circumstances of this case fall into this category. Specifically, he argues that the government's disclosure of the ATF report prior to the second day of trial violates the duty to disclose all evidence favorable to the defendant which is "material either to guilt or punishment." See Brady v. Maryland, 373 U.S. 83, 87 (1963). He argues the government proceeded to trial without the ATF report establishing the nexus

3

requirement, and it did so at its own peril. Thus, he argues, this case cannot be retried because the government's actions (including the late disclosure of the report, and presenting the AR-15 before the jury) were an attempt to "rescue a trial that is not proceeding favorably," and were designed to "goad him into seeking a mistrial." (Filing No. 85 at CM/ECF p. 4).

### A. Double Jeopardy

Defendant argues his right to be free of double jeopardy, guaranteed under the Fifth Amendment to the United States Constitution, would be violated if a retrial is permitted in this case. (Filing No. 84 at CM/ECF p. 1).

The protections afforded by the double jeopardy clause are implicated only when the accused has actually been placed in jeopardy. Jeopardy attaches when a jury is empaneled and sworn. Martinez v. Illinois, 134 S.Ct. 2070 (2014).

The Supreme Court in Oregon v. Kennedy, 456 U.S. 667, (1982) stated:

> The general rule is said to be that the double jeopardy clause does not bar reprosecution," ... where circumstances develop not attributable to prosecutorial or judicial overreaching, ... even if defendant's motion is necessitated by a prosecutorial error. However, retrial is barred where the error that prompted the mistrial is intended to provoke a mistrial or is "motivated by bad faith or undertaken to harass or prejudice" the defendant.

Id. at 670 (quoting United States v. Jorn, 400 U.S. 470, 485, (1971) and United States v. Dinitz, 424 U.S. 600, 611, (1976)). Dismissal on double jeopardy grounds requires clear and convincing evidence that the prosecution intended to provoke a mistrial. Garrison v. Burt, 637 F. 3d 849, 854 (8th Cir. 2011).

4

The government argues the ATF report establishing whether there is an interstate nexus of the various firearms and ammunition was promptly provided to Defendant, and it "did not even exist until after the close of court proceedings on the first day of trial." (Filing No. 91 at CM/ECF p. 1, citing Filing No. 87-3). The government argues there is therefore no factual basis for Defendant's assertion that the government intended to goad him into requesting a mistrial.

The record shows that Defendant requested information about the interstate nexus of the guns and ammunition on April 29, 2019, and that the government forwarded that request to the FBI later the same day. (Filing No. 87-1). The trial was continued, at Defendant's request, in May 2019. (Filing No. 87-2) The ATF's "Interstate Nexus Statement" was emailed to the government's counsel at 10:48 p.m. on August 19, 2019, and it was provided to defense counsel at 5:29 a.m. on August 20, 2019. (Filing No. 87-3) The report itself indicates that the ATF's examination of the firearms and ammunition did not take place until August 19, 2019. (Filing No. 87-3). The government argues that the record does not support a finding that the government intended to provoke a mistrial.

The motion for mistrial came on the morning of the second day of trial. The government's first witness had not concluded his direct testimony and was expected to resume his testimony on August 20, 2019. At that early stage in the trial, there is no indication that the government's case was proceeding unfavorably—that the government disclosed evidence late to prompt a motion for mistrial and thereby salvage a case that was not going well. Defendant has not shown clear and convincing evidence of prosecutorial misconduct, therefore his Motion to Dismiss on double jeopardy grounds should be denied.

B. Due Process

5

1. Alleged Brady Violation

Defendant argues his right to due process, guaranteed under the Fifth Amendment to the United States Constitution was violated because the mistrial was precipitated by the government's failure to provide Brady material to Defendant in a timely manner. If a retrial is permitted, Defendant seeks sanctions against the government for violating the progression order regarding Brady material. (Filing No. 85 at CM/ECF p. 8)

In Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court held that due process requires the government to disclose material, exculpatory evidence to the defendant. Id. at 87. "Under the rule in our circuit, Brady does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for a defendant to use it at trial." United States v. Szczerba, 897 F.3d 929, 941 (8th Cir. 2018). A defendant must establish that the government's delay in disclosing the evidence deprived him of its usefulness and that this deprivation materially affected the outcome of his trial.

In Szczerba, the Eighth Circuit concluded that defendant was not prejudiced by the disclosure of an FBI agent's interview summary on the fourth day of trial. Similarly, the record in this case shows that the ATF report was promptly provided to defense counsel after it was received, and that defense counsel was able to use it to support his motion for a mistrial. The disclosure of this report prior to the second day of trial did not prejudice Defendant's ability to move for a mistrial and to prepare for and defend himself during a future retrial. The alleged Brady violation does not support dismissal of this case or imposing sanctions against the government.

2. Alleged Vindictiveness of the Second Superseding Indictment

Defendant argues the second superseding indictment, including 19 Counts, was vindictive and the government retaliated against him for "exercising his right to a jury trial, seeking a mistrial because of the government's failure to properly disclose Brady material as required by this Court's Progression Order and exposing the government's lack of diligence in preparing and prosecuting this case." ([Filing No. 85 at CM/ECF pp. 11-12](#)). The second superseding indictment increased Defendant's possible sentence from a maximum of 10 years to a maximum of 190 years in prison. Defendant alleges there should be a presumption of vindictiveness because the additional counts expose him to additional punishment. Defendant argues that if retrial is permitted, the proper sanction would be to dismiss the second superseding indictment and that this case proceed on the single count charged in the superseding indictment.

"In order to demonstrate prosecutorial vindictiveness, a defendant must show that the superseding indictment containing the additional charges was sought in retaliation for exercising constitutional or statutory rights." [United States v. Chappell, 779 F.3d 872 (8th Cir. 2015)](#). [United States v. Punelli, 892 F.2d 1364, 1372 (8th Cir. 1990)](#). A defendant can prove such impermissible prosecutorial vindictiveness with objective evidence of the prosecutor's "vindictive or improper motive" in increasing the number or severity of charges. [United States v. Chappell, 779 F.3d 872, 879 (8th Cir. 2015)](#).

The original Indictment charged one count of Defendant being a felon in possession of "four rifles; three pistols; two shotguns; and ammunition; which had been shipped and transported in interstate commerce." ([Filing No. 1](#)). The

7

superseding indictment added an allegation that Defendant possessed the firearms and ammunition "knowingly." (Filing No. 39).[1]

After receiving the ATF report, dated August 19, 2020, the government had additional information upon which to base separate counts, and a second superseding indictment was filed after the mistrial on the initial indictment. The ATF report showed that the ATF was unable to establish an interstate nexus to three firearms, but that several of the seized firearms were manufactured outside of Nebraska and had traveled in interstate commerce. Additionally, the ATF established an interstate nexus for multiple rounds of ammunition, and established that, although certain rounds were manufactured in Nebraska, those rounds used powder/propellant powder and/or cartridge casings manufactured outside of Nebraska. Each of the 19 counts in the second superseding indictment identifies a particular firearm or ammunition, its manufacturer, and the location of manufacture. (Filing No. 75).

The government argues "[b]ecause the [ATF] report opined that some of the firearms and ammunition found during the search of Defendant's residence traveled in interstate commerce while an interstate nexus could not be established for others, the specific firearms and specific types of ammunition were charged in individual counts in an effort to avoid potential confusion." (Filing No. 91 at CM/ECF p. 7)

---

[1] The government clarifies that the language was added in response to Rehaif v. United States, 139 S.Ct. 2191 (June 21, 2019), in which the Supreme Court held that in order for a person to be found guilty of illegal possession of a firearm, the government must prove that the person knew that he was in possession of the firearm and that he/she had a prohibited status at the time of possession.

8

In Chappell and Punelli, the Eighth Circuit rejected claims of vindictive prosecution where new charges were filed for reasons other than a desire to punish the defendant for exercising his right to appeal. In Punelli, the court stated:

> Although a rebuttable presumption of vindictiveness *may* arise when prosecutors increase the number or severity of charges, '[i]f any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of the charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created.

Punelli, 892 F.2d at 1371. Further, the Eighth Circuit stated that there can be no prosecutorial vindictiveness if the prosecutor revised the charge because of newly discovered evidence. Id. at 1372.

While the government did not obtain new evidence, the government did receive new information in the form of the report explaining the interstate nexus, or lack thereof, of the firearms and ammunition and the need to provide clarity by distinguishing between these items in the charging documents. Here, the government provides a reasonable explanation for identifying the various firearms and ammunition in the charges alleged, and that explanation is wholly unrelated to a desire to punish Defendant for moving for a mistrial. Defendant has not established prosecutorial vindictiveness and the Motion to Dismiss on this basis should be denied.

II. Speedy Trial

Defendant argues his right to a speedy trial, as guaranteed by the Sixth Amendment to the United States Constitution was violated because he has been under prosecution by the State of Nebraska and/or the District of Nebraska since

9

April 3, 2017, without any resolution of the charges filed against him. (Filing No. 84 at CM/ECF p. 2).

Defendant argues the government's lack of diligence in properly preparing its case against him was a "considerable factor as to why continuances were sought in this case." (Filing No. 85 at CM/ECF p. 13). Defendant acknowledges that he has not invoked his speedy trial rights until now, but argues that he has suffered physical, mental, familial, and financial hardships due to the delay in resolving this case. As a result, he argues that his right to a speedy trial has been denied and dismissal is the "only possible remedy." (Filing No. 85 at CM/ECF p. 15).

The Sixth Amendment right to a speedy trial is a right separate from the right to a speedy trial under 18 U.S.C. § 3161.

> To trigger [constitutional] speedy trial analysis, the defendant must allege the interval between accusation and trial has crossed a line dividing ordinary from presumptively prejudicial delay. If presumptively prejudicial delay is present, we next analyze the following factors: (1) whether the delay before trial was uncommonly long; (2) whether the government or the criminal defendant is more to blame for the delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice as a result of the delay.

United States v. Saguto, 929 F.3d 519 (8th Cir. 2019). (internal quotations removed); see also United States v. Sims, 847 F.3d 630 (8th Cir. 2017) (citing Barker v. Wingo, 407 U.S. 514 (1972)).

The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences. Sims, 847 F.3d at 634.

10

The initial indictment was filed on September 18, 2018, and Defendant's trial began on August 19, 2019; thus, the initial delay was approximately 11 months, and because a retrial has not yet begun, the current delay is approximately 18 months. Such a delay has been held to be "presumptively prejudicial" and stretches beyond the "bare minimum" needed to trigger judicial examination of the remaining factors. Id. (citing United States v. Walker, 840 F.3d 477 (8th Cir. 2016)).

The second factor – assigning responsibility for the delay – does not favor Defendant. The record shows that Defendant sought, or agreed to, multiple continuances and that the delays in the final resolution of this case were undertaken with his consent and/or the court has determined that the ends of justice served by the delays outweighed his interest in a speedy trial. The following periods (some of which overlapped) were found to be excludable in the time leading up to the first trial:

- November 8, 2018 to December 21, 2018 following Defendant's unopposed motion to continue the Pretrial Motion Deadline. (Filing No. 16, Filing No. 17).
- December 21, 2018 to January 7, 2019 following Defendant's unopposed motion to continue the Pretrial Motion Deadline. (Filing No. 18, Filing No. 19).
- The period beginning January 7, 2019 following Defendant's Motion to Suppress. (Filing No. 20, Filing No. 25, Filing No. 33).
- January 29, 2019 to April 15, 2019, following Defendant's Motion to continue the time to object to the undersigned magistrate judge's findings, recommendation, and order. (Filing No. 26, Filing No. 27).
- April 3, 2019 to June 3, 2019, following Defendant's unopposed motion to continue trial. (Filing No. 34, Filing No. 35).

11

- May 21, 2019 to July 8, 2019, following Defendant's unopposed motion to continue trial. ([Filing No. 36](), [Filing No. 37]()).
- May 27, 2019 to August 19, 2019, following Judge Kopf's order that trial be rescheduled, as counsel for Defendant and the government sought a continuance of trial for "good and sufficient reasons." ([Filing No. 38]()).

As to the period leading up to the first trial, the overwhelming majority of the continuances sought in this case were a result of Defendant's motions to continue the pretrial motion deadline, motions to continue trial, or they were attributable to time needed to submit, consider, and rule on Defendant's pretrial motions.

Defendant argues that the government's lack of diligence led to the delays leading up to the first trial. However, this argument appears to be based on the government's failure to produce the ATF interstate nexus report, and the record demonstrates this report was not requested until April 29, 2019 and only one of Defendant's motions to continue trial occurred after that request.

All of the time that has elapsed since the declaration of a mistrial has been excludable from the computation of time under the Speedy Trial Act. Following the mistrial, a status conference was scheduled for September 19, 2019 and the time between August 20, 2019 and September 19, 2019 was excluded. Defendant agreed to the date of the status conference and did not object to excluding the time. ([Filing No. 71 at CM/ECF pp. 3-6]()).

The second superseding indictment was filed on September 18, 2019 ([Filing No. 75]()). Following the status conference on September 19, 2019, the court set a new trial date of February 3, 2020 and excluded the time between September 19, 2019 and February 3, 2020 from the computation of time under the Speedy Trial Act. ([Filing No. 78]()). On January 24, 2020, Defendant filed the current motion to

12

dismiss—approximately four months after the second superseding indictment was filed, and approximately 10 days before retrial was scheduled to begin. (Filing No. 75). The government cannot be found to be "more to blame" for the delay leading up to the retrial. Saguto, 929 F.3d 519.

The third factor considers the defendant's assertion of the right to a speedy trial. Defendant never asserted his right to a speedy trial nor objected to any of the court's orders excluding time from Speedy Trial computation.[2] This factor does not favor Defendant.

The fourth and final factor considers whether the defendant suffered prejudice as a result of the delay. Defendant cites case law stating that the speedy trial guarantee is designed to minimize the possibility of a lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest in the presence of unresolved criminal charges. United States v. MacDonald, 456 U.S. 1, 8 (1982).

Defendant asserts he has "suffered immeasurably" from his prosecutions in state and federal court, but he cannot demonstrate prejudice because Defendant caused or consented to the vast majority of any delays. He was detained only for the period between his arrest on October 4, 2018 and his initial appearance October 9, 2018, and thereafter he was released on conditions. He presented no evidence that the time lapse diminished his ability to mount an effective defense.

---

[2] The orders of November 8, 2018 (Filing No. 17) and December 21, 2018 (Filing No. 19) state that the time is deemed excludable from any computation of time under the requirements of the Speedy Trial Act and failure to timely to object to the order will be deemed a waiver of any right to later claim the time should not have been excluded.
    Filing Nos. 27, 35, and 37, and 38 continuing trial all contain a specific finding that the ends of justice served by granting Defendant's motion to continue outweigh the interest of the public and the defendant in a speedy trial, as required by 18 U.S.C. § 3161(7)(A).

13

Further any claim of prejudice related to his state prosecution cannot be counted against the government in this case. See United States v. Perez-Perez, 337 F. 3d 990, 996 (8th Cir. 2003) .

Weighing all the factors, I conclude that Defendant's Sixth Amendment right to a speedy trial was not violated and his Motion to Dismiss should be denied.

III.   Exclusion of Items with No Established Interstate Nexus

Defendant argues that certain items with no established interstate nexus should be excluded as evidence and the government should be barred from making any mention of the AR-15 at a retrial. Whether Defendant is entitled to exclude the AR-15 and other "homemade" firearms found in the residence, and the ammunition of uncertain manufacture and for which the ATF has been unable to establish an interstate nexus, are evidentiary questions reserved for Judge Kopf at trial.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to dismiss filed by the defendant (Filing No. 84) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before Richard G. Kopf, Senior United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on **May 11, 2020**, or as soon thereafter as the case may be called, for a duration of four (4) trial days. Jury selection will be held at the commencement of trial.

Dated this 30th day of March, 2020.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge