IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>EDWARD HANSEN,<br><br>        Defendant. | 4:18-CR-3140<br><br>MEMORANDUM AND ORDER |

This matter is before the Court upon initial review of the pro se motion to vacate under 28 U.S.C. § 2255 (filing 179) filed by defendant Edward Hansen. The motion was timely filed less than 1 year after the defendant's conviction became final. *See* § 2255(f). The Court's initial review is governed by Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, which provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

A § 2255 movant is entitled to an evidentiary hearing unless the motion and the files and records of the case conclusively show the movant is entitled

to no relief. § 2255(b); *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010). Accordingly, a motion to vacate under § 2255 may be summarily dismissed without a hearing if (1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995); *see also Sinisterra*, 600 F.3d at 906.

## I. BACKGROUND

On September 18, 2018, Mr. Hansen was charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Filing 1. Specifically, Mr. Hansen was charged with possessing "four rifles; three pistols; two shotguns; and ammunition," which were found in a home he shared with his girlfriend. Filing 1; filing 21. In response, Mr. Hansen filed a motion to suppress and requested a *Franks* hearing. Filing 20. The motion was denied without a hearing. Filing 33.

On August 19, 2019, the case proceeded to a jury trial. However, on the second day of trial, the presiding judge declared a mistrial at Mr. Hansen's request after the government introduced and displayed an AR-15 assault rifle that it later determined could not be established as part of the charged offense. Filing 63. Subsequently, the government filed a second superseding indictment that charged Mr. Hansen with nineteen separate counts under §§ 922(g)(1) and 924(a)(2), each count reflecting a type of ammunition or firearm found in the home. Filing 75.

Mr. Hansen filed a motion to dismiss the second superseding indictment, alleging violations of his due process, speedy trial and double jeopardy rights, and that the government's introduction of the AR-15 "goaded [him] into

2

seeking a mistrial." Filing 84 at 1. Additionally, he contended the new indictment was filed vindictively, as it increased his "statutory prison exposure from a maximum of 10 years in prison to a maximum of 190 years in prison" despite the fact that "no additional information was obtained from the declaration of the mistrial to the filing of the Second Superseding Indictment." Filing 84 at 1-2. The Court found these claims to be without merit and denied the motion. Filing 111.

Mr. Hansen subsequently pled guilty and was convicted of Count II of the second superseding indictment, which charged that "knowing he had been convicted of a crime punishable by imprisonment for a term exceeding one year, [he] knowingly possessed a Molot 12 gauge shotgun Model VEPR; which had been shipped and transported in interstate commerce." Filing 75 at 1; filing 127; filing 147. He was sentenced to 36 months of imprisonment, and judgment was entered on February 18, 2021. Filing 147.

As part of the plea agreement, Mr. Hanson "reserve[d] the right to appeal the . . . decision of the district court denying [his] motion to suppress and request for an evidentiary hearing and the district court's Orders denying his motion to dismiss." Filing 127 at 2. And Mr. Hansen did appeal to the Eighth Circuit, arguing the district court wrongfully denied his motion for a *Franks* hearing. Filing 167. The Eighth Circuit determined the district court did not abuse its discretion and affirmed the judgment. Filing 167 at 5. Now, Mr. Hansen has filed a motion under § 2255 to vacate his sentence based on five grounds: (1) he received ineffective assistance of counsel as it pertains to his motion to suppress and for a *Franks* hearing; (2) that § 922(g)(1) is unconstitutional as applied to him; (3) that § 922(g)(1) is unconstitutional on its face; (4) because § 922(g)(1) is unconstitutional facially and as applied, the

3

indictment fails to state an offense; and (5) defense counsel was ineffective in failing to challenge the constitutionality of § 922(g)(1). Filing 179 at 4-12. The Court will address each allegation in turn to determine if Mr. Hansen is entitled to an evidentiary hearing.

## II. DISCUSSION

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

During the pretrial and trial stages of his case, Mr. Hansen was represented by John Vanderslice. Filing 179 at 10. He now argues that Mr. Vanderslice provided ineffective assistance of counsel as it relates to his motion to suppress. Filing 179 at 22-23.[1]

To establish ineffective assistance of counsel, the defendant must show that his attorney's performance was deficient and that this prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance can be shown by demonstrating that counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. However, the Court's scrutiny of counsel's performance is highly deferential, because the Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689.

---

[1] In a single sentence of his nearly 100-page filing, Mr. Hansen also argues he received ineffective assistance of counsel in his underlying state court felony case—the conviction that makes him a prohibited person for purposes of §922(g)(1). *See* filing 179 at 13. However, in these circumstances, a § 2255 motion is not the "appropriate vehicle" to challenge the constitutionality of a previous state court conviction based on ineffective assistance of counsel. *Cf. Daniels v. United States*, 532 U.S. 374 (2001).

4

To satisfy the prejudice prong of *Strickland*, the defendant must show that counsel's error actually had an adverse effect on the defense. *Gregg v. United States*, 683 F.3d 941, 944 (8th Cir. 2012). The defendant must do more than show that the errors had some conceivable effect on the outcome of the proceeding. *Id*. Rather, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A "reasonable probability" is less than "more likely than not," but it is more than a possibility; it must be sufficient to undermine confidence in the outcome of the case. *Paul v. United States*, 534 F.3d 832, 837 (8th Cir. 2008).

A brief summary of the issues raised by Mr. Hansen's motion to suppress is necessary to fully understand his ineffective assistance of counsel claim. The firearms and ammunition that Mr. Hansen was charged with possessing were found when the Ord Police Department executed a search warrant at the home he shared with his girlfriend, Jessica Proskocil. *See* filing 22. Officer Paul Deaver obtained the warrant. Filing 22-1. According to his supporting affidavit, dated April 1, 2017, the police department reviewed a firearm purchase made by Ms. Proskocil on September 14, 2016. Filing 22-1. And based on his previous investigations and interactions with Mr. Hansen, Officer Deaver recognized the address Ms. Proskocil listed on the firearm transaction record as the home she shared with Mr. Hansen. Filing 22-1 at 1. He also stated that Mr. Hansen's record indicated he was a convicted felon. Filing 22-1 at 1.

The affidavit went on to explain that, approximately seven months after Ms. Proskocil's firearm purchase, Officer Deaver and another officer coordinated with the local garbage collection agency to conduct a "trash pull" at Mr. Hansen's residence. Filing 22-1 at 1-2. The affidavit states:

5

> a JJ Sanitation employee . . . drove the garbage truck to 1114 T Street, Ord, NE 68862 to retrieve the trash. I personally rode in the cab of the garbage truck. When the truck arrived . . . I saw the trash receptacle placed on the East side of the garage at 1114 T Street, Ord, NE. I got out of the truck and physically brought the trash container to the truck.

Filing 22-1 at 2. The officers conducted a search and the following items were collected: (1) a Ziploc bag with plant manner that field tested positive for marijuana; (2) plastic bags with the distinct odor of marijuana; (3) publications that appeared to be selling firearm parts, accessories, and magazines; (4) a March 16, 2017, HR Block "transaction history" listing Mr. Hansen's name and address and reflecting "multiple transactions for gun related accessories"; and (5) an invoice for a firearm parts kit. Filing 22-1 at 3. Accordingly, the warrant authorized a search of Mr. Hansen's residence and the seizure of firearms, gun parts, ammunition, and controlled substances. Filing 22-1 at 4.

      Mr. Hansen moved to suppress the evidence found during the search of his home, arguing that the "trash pull" evidence used in Officer Deaver's supporting affidavit to establish probable cause was obtained in violation of the Fourth Amendment. Filing 20. Specifically, Mr. Vanderslice argued that Mr. Hansen never placed his garbage at the agreed-upon collection location or in a place readily accessible to the public. Filing 21 at 2-3. Instead, to reach his garage and garbage bin, the officers entered his private property—a fact that Officer Deaver intentionally or recklessly omitted from the warrant affidavit. Filing 21 at 1. This motion was denied. *See* filing 33.

6

And herein lies Mr. Hansen's primary ineffective assistance of counsel claim: Counsel allegedly failed to use evidence provided by Mr. Hansen and properly distinguish case law to establish the "gravel road" officers used to reach the garbage bin was actually a "private driveway," not a publicly maintained road. Filing 179 at 22. According to Mr. Hansen, the evidence that Mr. Vanderslice failed to present would have clearly established that his garbage container was not visible from the street and that there were barriers preventing access by the public (and Officer Deaver). Filing 179 at 22-23.

Accepting Mr. Hansen's allegations as true, he *may* have made a showing that Mr. Vanderslice's representation fell below the objective standard of reasonableness. Emails allegedly sent from Ms. Proskocil demonstrate that Mr. Vanderslice was provided a detailed description of the property and various plot maps. *See* filing 179 at 32-46, 72. Still, it appears Mr. Vanderslice did not provide the court with any of these documents. Instead, he provided a single satellite map of the property with notations. *See* filing 30-1 at 1. And in denying the motion to suppress without a *Franks* hearing, the district court found that Mr. Hansen failed to make a substantial preliminary showing that Officer Deaver intentionally or recklessly omitted from his affidavit that he entered private property to collect the trash because *there was not sufficient evidence to actually establish the gravel road was in fact a private driveway*. Filing 33 at 9. On appeal, the Eighth Circuit affirmed the district court's denial of a *Franks* hearing, holding that Mr. Hansen failed to provide sufficient evidence to determine if the gravel road was public or private property. Filing 167 at 4.

Still, an evidentiary hearing on Mr. Hansen's ineffective assistance of counsel claim is not appropriate, as he failed to make any showing that Mr.

7

Vanderslice's conduct had an adverse effect on his defense. A defendant is only entitled to a *Franks* hearing if he makes a substantial preliminary showing "that the alleged false statement or omission *was necessary to the finding of probable cause*." *United States v. Gabrio,* 295 F.3d 880 (8th Cir. 2002) (emphasis added). In other words, if a warrant is still supported by probable cause after the officer's affidavit is reconstructed without the allegedly false statements (and related evidence), the defendant is not entitled to a *Franks* hearing, as no Fourth Amendment violation has occurred.

Here, in denying Mr. Hansen's motion for a *Franks* hearing, the district court specifically proclaimed: "[E]ven if the list of items discovered as a result of the trash pull were stricken from the affidavit, there would still be sufficient information from which to conclude that evidence of the crime for which Defendant is now charged was likely to be found on the premises." Filing 33 at 9. Specifically, the court found the affidavit's description of Mr. Hansen's prior felony conviction, its statement that Mr. Hansen cohabitated with Ms. Proskocil, and her purchase of a shotgun seven months prior using their shared address, were sufficient to establish probable cause. Filing 33 at 10.

This was a well-reasoned decision based on the offense being investigated and the principles of constructive possession. *See United States v. Boykin,* 986 F.2d 270, 274 (8th Cir. 1993) (holding that the issue ownership "is irrelevant to the issue of possession" and that constructive possession of a firearm can be "established if the person has dominion over the premises where the firearm is located"). Therefore, even if Mr. Vanderslice had used additional evidence to establish that Officer Deaver's affidavit recklessly omitted that he conducted the trash pull on private property, there is not a reasonable probability that Mr. Hansen's proceedings would have had a different

8

outcome.[2] *See United States v. Patterson*, 68 F.4th 402, 415 (8th Cir. 2023) (holding defendant's *conclusory* argument—that without the challenged affidavit statements, a warrant lacked probable cause—was insufficient to make the necessary showing under *Franks*). And this conclusion is further bolstered by the fact that, over the course of his arguments, Mr. Hansen has admitted the validity of each statement the district court relied on to establish probable cause without the evidence obtained during the trash pull. *See* filing 22-1 at 1; filing 179 at 13, 25.

Next, Mr. Hansen argues that Officer Deaver's knowledge of the address listed in the search warrant came *exclusively* from evidence obtained during the illegal trash pull, and that Mr. Vanderslice's failure to raise this issue had an adverse impact on his defense. *See* filing 179 at 22. But this claim is contradicted by the record. In his affidavit—which was reviewed by the district court—Officer Deaver stated that he was an officer with the Ord Police

---

[2] In affirming the district court's decision, the Eighth Circuit focused exclusively on the issue presented: whether the district court acted within its discretion in denying Mr. Hansen's motion to suppress *without a* Franks *hearing*. *See* filing 167 at 1. Since it concluded—like the district court—that Mr. Hansen failed to make a substantial preliminary showing that Officer Deaver intentionally or recklessly omitted pertinent information from his warrant affidavit, it did not need to address the second prong of *Franks*. *See* filing 167 at 4. Therefore, while the Eighth Circuit did note that failing to establish the private-property status of the land was "fatal" to Mr. Hansen's motion for a *Franks* hearing, this statement was made in the particular context of its analysis, and does not imply—as Mr. Hansen suggests—that he would have certainly established the second prong of the *Franks* test and secured a hearing absent this failure. The Eighth Circuit simply did not get to the second prong of *Franks*, and this Court has no reason to believe it would disagree with the district court's well-reasoned decision on this matter.

9

Department and that, *during previous investigations*, he had "come into contact with Edward R. Hansen." Filing 22-1 at 1. He then stated, "Hansen resides at 1114 T Street, Ord, NE 68862, with his girlfriend Jessica L Proskocil." Filing 22-1 at 1.

Officer Deaver's personal knowledge of Mr. Hansen's place of residence *from previous investigations* was to be given a presumption of validity and was adequate to support a finding of probable cause to search the residence. *See United States v. Searcy*, 181 F.3d 975, 981 (8th Cir. 1999). And Mr. Hansen's belief that Mr. Vanderslice should have argued otherwise does not establish a reasonable probability that such arguments would have changed the outcome of his case. *See United States v. Gibson*, 123 F.3d 1121, 1124 (8th Cir. 1997) (citing *Franks v. Deleware*, 438 U.S. 154, 171 (1978)). This is especially true given that the only evidence establishing that Officer Deaver was *not* aware of Mr. Hansen's association with this address before the trash pull is Mr. Hansen's own conclusory allegations, which are insufficient to overcome the presumption of validity given to Officer Deaver's sworn statements. *See United States v. Rodriguez*, 414 F.3d 837, 842 (8th Cir. 2005).

Additionally, Mr. Hansen argues that Mr. Vanderslice failed to present the district court with evidence that could have affected the probable cause determination and rendered the *Leon* good-faith exception inapplicable. Filing 179 at 26. Specifically, Mr. Hansen asserts that Mr. Vanderslice failed to present evidence establishing that (1) he had been harassed by Officer Deaver before the search, (2) at the time of the search, Officer Deaver was interested in buying the same home as Mr. Hansen, and (3) Officer Deaver omitted from the warrant affidavit that his body camera was off during the trash pull in

10

violation of applicable policies. Filing 179 at 22-23. But again, even if Mr. Hansen's allegations are true, they would not entitle him to relief.

When determining a warrant's validity under the Fourth Amendment, courts are required to "focus solely on the objective question of whether probable cause existed." *United States v. Clarke*, 110 F.3d 612, 613-14 (8th Cir. 1997). Thus, an officer's subjective intent is irrelevant to a probable cause determination, and improper motives "cannot invalidate police conduct that is justified by probable cause." *Id*. Accordingly, there is no basis for concluding that evidence of Officer Deaver's subjective motivations for pursuing the warrant would have altered the probable cause determination. Additionally, to the extent this evidence could establish the inapplicability of the good-faith exception, that still would have had no impact on the proceedings in question, as probable cause was established independent of the allegedly false and illegally obtained evidence. *See United States v. Lopez-Zuniga*, 909 F.3d 906, 909 (8th Cir. 2018) (explaining that the good-faith exception only comes into play when probable cause for the issuing warrant *did not exist*).

Finally, in a similar vein, Mr. Hansen argues that Mr. Vanderslice failed to file a motion to reconsider his motion to suppress in light of new evidence that Officer Deaver was fired from the Ord Police Department for lying about his actions as a law enforcement officer. *See* filing 179 at 23, 81-83. First, while evidence in the record supports the conclusion that Officer Deaver was, in fact, fired, *see* filing 179 at 83, that he was fired specifically for "lying about his actions" as a law enforcement officer is a conclusory allegation by Mr. Hansen unsupported by anything else in the record. *See* filing 179 at 81. Therefore, it need not be taken as true.

11

But even assuming Officer Deaver was fired for lying, Mr. Hansen does not claim—nor is there any evidence—that Officer Deaver was fired specifically for lying about his actions *related to this case or in the warrant affidavit at issue*. And generalized allegations that an officer acted dishonestly during his tenure as a law enforcement officer are simply insufficient "to make [the] substantial preliminary showing of a false or reckless statement" needed to overcome the presumption of validity given to an officer's supporting affidavit. *Franks*, 438 U.S. at 170. As Mr. Hansen fails to explain how evidence of Officer Deaver's firing helps establish "specifically the portion of the warrant affidavit that is claimed to be false," there is no basis to conclude a motion to reconsider his request for a *Franks* hearing would have resulted in a different outcome. *See id*.

In conclusion, even taking Mr. Hansen's allegations as true, he would not be entitled to relief under *Strickland*. Thus, the Court will deny his § 2255 motion based on ineffective assistance of counsel without a hearing.

## 2. SECOND AMENDMENT ARGUMENTS

Mr. Hansen's remaining arguments challenge the constitutionality of the statutes under which he was convicted.[3] Section 922(g)(1) states: "It shall be unlawful for any person who has been convicted in any court of, a crime

---

[3] Mr. Hansen argues that both statutes under which he was convicted—§ 922(g)(1) and § 924(a)(2)—are unconstitutional facially and as applied to him. At the time Mr. Hansen was indicted and sentenced, § 924(a)(2) was the operative penalty statute for violations of § 922(g)(1). *See* 18 U.S.C. § 924(a)(1) (2018) (amended 2022). Thus, as the validity of § 924(a)(2) in this case is fully dependent on the constitutionality of § 922(g)(1), it will not be discussed separately.

12

punishable by imprisonment for a term exceeding one year to . . . possess in or affecting commerce, any firearm or ammunition." Specifically, Mr. Hansen argues that § 922(g)(1) is unconstitutional on its face, as its application to "all felons," including "non-violent felons," is overbroad. Filing 179 at 19. Mr. Hansen also argues that § 922(g)(1) is unconstitutional as applied to him because the prohibition was implemented to disarm those who threaten public safety, and he "neither belongs to a dangerous category nor bears individual markers of risk that might justify dispossessing him of firearms." Filing 179 at 15.

In support of these arguments, Mr. Hansen repeatedly points to the Supreme Court's recent decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). *See* filing 179 at 15-21. While he is correct that *Bruen* articulated a new framework for determining the constitutionality of firearm regulations under the Second Amendment, the Supreme Court emphasized that its holding was consistent with two other landmark cases: *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010). In both of these cases, the Supreme Court reiterated that one's Second Amendment right to possess a firearm for self-defense *is not unlimited*, thereby casting no doubt on the constitutionality of long-standing "prohibitions on the possession of firearms by felons." *Id. See McDonald*, 561 U.S. at 786; *Heller*, 554 U.S. at 626.

Additionally, *Bruen* repeatedly underscored the nation's history and tradition of protecting the right of "***law-abiding citizens***" to carry firearms for self-defense. 142 S.Ct. at 2138. And some Justices went so far as to say that the holding did not cast doubt on the "longstanding prohibitions on the possession of firearms by felons." *See id.* at 2162 (Kavanaugh, J., concurring,

13

joined by Roberts, C.J.); *cf. id.* at 2157 (Alito, J., concurring); *id.* at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.). Still, some circuits have concluded post-*Bruen* that § 922(g)(1) may be unconstitutional *as applied* to certain individuals convicted of non-violent crimes where the government fails to prove the Nation has a longstanding history and tradition of depriving similarly situated individuals from possessing firearms. *See Range v. Att'y Gen. United States of Am.,* No. 21-2835, 2023 WL 3833404 (3d Cir. June 6, 2023). And others courts have grappled with facial attacks to § 922(g)(1) post-*Bruen*. *See United States v. Freeman*, No. 23 CR 158, 2023 WL 3763745, at \*2 (N.D. Ill. June 1, 2023) (upholding § 922(g)(1) as facially constitutional but noting "the Seventh Circuit has not addressed this issue post-*Bruen*").

While Mr. Hansen is not wrong that courts will continue to face tough questions concerning the constitutionality of certain firearm regulations in the post-*Bruen* landscape, this Court need not engage in a rigorous analysis to decide his present claims. Just this month—relying on *Heller*, *McDonald*, and *Bruen*—the Eighth Circuit reaffirmed the constitutionality of § 922(g)(1), both facially and as applied to "non-violent" felons, and the Court is bound by that decision. *See United States v. Jackson*, No. 22-2870, 2023 WL 3769242, at \*1 (8th Cir. June 2, 2023); *Bendet v. Sandoz Pharms. Corp.*, 308 F.3d 907, 911 (8th Cir. 2002); *accord United States v. Cunningham*, No. 22-1080, 2023 WL 3960829, at \*3 (8th Cir. June 13, 2023).

In *Jackson*, the Eighth Circuit was presented with one of the exact arguments raised by Mr. Hansen: whether § 922(g)(1) may be unconstitutional as applied to an individual previously convicted of a "non-violent" drug offense that fails to demonstrate "he is more dangerous than the typical law-abiding citizen." *Jackson*, 2023 WL 3769242, at \*8. However, in rejecting this claim,

14

the court did not examine the defendant's criminal and personal history to determine the specific threat he posed to public safety. *See id.* at *8. Instead, it held that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Id.* at *8.

According to the court, legislatures in this country have historically disqualified **categories of persons**—including those who deviate from legal norms and those who present an unacceptable risk of danger—from possessing firearms. *Id.* at *12. In other words, status-based prohibitions based on the conclusion that the targeted category ***as a whole*** presents an unacceptable risk of danger if armed, "pass muster under historical analysis." *See id.* And Congress acted within this "historical tradition" when it enacted § 922(g)(1) without requiring an individualized determination of dangerousness. *Id.* at *8-14.

Thus, *Jackson* expressly rejected Mr. Hansen's claim that § 922(g)(1) is facially unconstitutional under the *Bruen* framework. And his as-applied challenge based on the "non-violent" nature of his prior conviction is likewise foreclosed by *Jackson*. While Congress could have concluded that only those convicted of certain "violent" felonies pose an increased threat of danger when armed, or required an individual assessment of dangerousness before dispossession, it did not. Instead, Mr. Hansen falls squarely within the category of persons that Congress dispossessed under § 922(g)(1). *See id.* at *13. And the Court is not at liberty to override the statute's application based on his individual characteristics and circumstances when the categorical ban was reasonably and lawfully adopted.

On these grounds, the Court also declines to grant Mr. Hansen a hearing on his claim that, given the unconstitutionality of § 922(g)(1), the indictment

15

under which he was convicted failed to state an offense against him. *See* filing 179 at 20. Similarly, Mr. Hansen's claim that his counsel was ineffective for failing to challenge the constitutionality of § 922(g)(1) cannot entitle him to relief, as *Jackson* demonstrates that failing to raise these arguments had no adverse impact on his defense. *See* filing 179 at 21.

## CONCLUSION

The defendant's allegations either entitle him to no relief, or are contradicted by the record. Accordingly, his § 2255 motion will be summarily dismissed. A movant cannot appeal an adverse ruling on his § 2255 motion unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, the movant must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claims debatable or wrong. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *see also Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012).

In this case, the defendant has failed to make a substantial showing of the denial of a constitutional right. The Court is not persuaded that the issues raised are debatable among reasonable jurists, that a Court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, the Court will not issue a certificate of appealability.

IT IS ORDERED:

1. The defendant's motion (filing 179) is denied.

16

2. The Court will not issue a certificate of appealability in this matter.

3. A separate judgment will be entered.

Dated this 22nd day of June, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

17